**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 07a0306n.06**
**Filed: May 2, 2007**

**No. 06-5502**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| PROVIDENT BANK DBA PCFS MORTGAGE RESOURCES, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant-Appellee. | ) | |

**Before: SILER, GIBBONS, and ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge.** Robert and Julie Mathis obtained a mortgage on their house from Plaintiff-Appellant Provident Bank ("the Bank") and insured the house with Defendant-Appellee Tennessee Farmers Mutual Insurance Company ("TFM") against, among other things, the risk of loss from fire. The insurance policy named the Bank as an insured. The Bank initiated foreclosure proceedings against the Mathises, but those proceedings were stayed because the Mathises filed a voluntary petition for bankruptcy. Subsequently, the Mathises' house burned to the ground. TFM refused to pay the Bank's claim, arguing that the Bank failed to comply with a provision of the insurance agreement, which stated that "[i]f [TFM] den[ies] an insured's claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee . . . has notified us . . . of any . . . foreclosure . . . of which the mortgagee was aware prior to loss." JA 90. The Bank sued, arguing

that (1) the term "foreclosure" in the insurance contract was ambiguous; and (2) a Tennessee statute which states that a mortgagee's claim for insurance "shall not be invalidated . . . by any foreclosure," Tenn. Code Ann. § 56-7-804, prohibited TFM from invalidating the Bank's insurance claim on the grounds that the Bank failed to notify TFM of the initiation of foreclosure proceedings. The district court ruled in favor of TFM on cross-motions for summary judgment.

Because the term "foreclosure" in the insurance contract is ambiguous, and, therefore, genuine issues of material fact still exist as to the meaning of the contract, we reverse and remand the case to the district court.

**Background**

The complaint alleges the following facts, which are not disputed:

On or about October 15, 1999, Robert Mathis obtained a residential mortgage loan from the Bank in the amount of $176,800. Mathis and his wife pledged their house as collateral for the loan. Pursuant to the loan requirements, the Mathises obtained a homeowners insurance policy from TFM. That policy provided coverage against, among other things, the risk of loss from fire. The Bank was the insured mortgagee under the policy pursuant to a standard insured-mortgagee clause.

After the Mathises became delinquent in their mortgage payments, the Bank initiated foreclosure proceedings. By a letter dated March 5, 2002, the Bank referred the Mathises' loan to the firm of Tatum & Jones for foreclosure. On March 13, 2002, the Bank published in the local

newspaper notice of its intent to foreclose on the Mathises' house on June 6, 2002. By a letter dated March 21, 2002, Tatum & Jones notified the Mathises that it was beginning legal work to foreclose on their house. Tatum & Jones also appointed a substitute trustee, executed a title search on the property, and prepared an advertisement for the foreclosure sale. The Bank did not notify TFM that it had initiated foreclosure proceedings against the Mathises.

On March 22, 2002, the Mathises filed a joint voluntary petition for bankruptcy with the Bankruptcy Court for the Western District of Tennessee. Foreclosure proceedings ceased pursuant to the automatic stay under 11 U.S.C. § 362. On July 9, 2002, the Bankruptcy Court discharged the Mathises' bankruptcy.[1]

On August 9, 2002, the Mathises' house was destroyed by fire. The house was a total loss, and the Mathises submitted a claim for benefits under the TFM insurance policy. The Bank, being owed the principal balance of the loan of $175,308.95 (as of December 31, 2003), also submitted a claim for benefits, which TFM refused to pay. TFM stated that it refused to pay the Bank's claim because (1) the Bank failed to notify TFM that it was foreclosing on the Mathises' mortgage, as

---

[1]Subsequently, on September 10, 2002, Julie Mathis filed another voluntary petition for bankruptcy, which was dismissed by the Bankruptcy Court on October 9, 2002.

required by the insurance contract,[2] and (2) the Bank failed to provide certain documentation to TFM.

The Bank, an Ohio citizen, brought a diversity suit against TFM, a Tennessee citizen, in the United States District Court for the Western District of Tennessee for breach of contract, bad faith refusal to pay under Tennessee Code § 56-7-105(a), and violation of the Tennessee Consumer Protection Act, §§ 47-18-101 *et seq*. The Bank moved for partial summary judgment, arguing that Tennessee Code section 56-7-804 prohibits an insurer from invalidating a claim because of the mortgagee's foreclosure on the insured property. TFM responded and moved for summary judgment, arguing that the Bank violated the terms of the insurance contract by not notifying TFM prior to foreclosing on the Mathises' house. The district court granted TFM's motion and denied the Bank's motion.

The district court first held that "the initiation of foreclosure proceedings is tantamount to 'foreclosure' within the meaning of [Tennessee Code section 56-7-804] and the insurance policy" such that the Bank "had a duty to notify [TFM] of the initiation of [the foreclosure] proceedings under the insurance policy." JA 314. The court also held that the initiation of foreclosure

---

[2]Because TFM (presumably) denied the Mathises' claim, the Bank could only recover under the insurance contract if it complied with the standard insured-mortgagee clause by, among other things, giving notice to TFM prior to any foreclosure of which the Bank was aware prior to the fire. *See* JA 90.

proceedings did not increase the risk of hazard under Tennessee Code section 56-7-804.[3] As relevant

here, section 56-7-804 protects a mortgagee from having an insurance claim invalidated because of

acts taken by a mortgagor that result in the invalidation of the mortgagor's insurance coverage (e.g.,

where a mortgagor's insurance is voided because of change of ownership, the insurer cannot

invalidate the mortgagee's claim if the mortgagee did not know about the change of ownership). The

court also held that the insurance policy's notification requirement was not void under section 56-7-

804 because parties may contract around the protection of that section. Finally, the district court held

that the policy's reference to "foreclosure" was not ambiguous.

The Bank timely filed a notice of appeal.

**Standard of Review**

---

[3]That provision states, in relevant part:

> When any person shall, as trustee, mortgagee, assignee, or otherwise, possess or have any fire insurance policy on realty made payable to such person, or other person as that person's interest may appear, then such insurance as to the interest of the trustee, mortgagee, assignee or other person therein named shall not be invalidated by an act or neglect of the mortgagor owner of the property so insured, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by change in title or ownership of the property, nor by occupation of the premises for purposes more hazardous than are permitted by such policy; . . . and provided further, that the mortgagee, trustee, assignee, or other such person shall notify the insurance company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the mortgagee, trustee, assignee, or other such person . . . .

Tenn. Code. Ann. § 56-7-804.

This court reviews the district court's order granting summary judgment de novo. *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005).

**Analysis**

TFM was not entitled to summary judgment because the term "foreclosure" in the insurance contract is ambiguous. The insurance contract states, in relevant part, that "[i]f [TFM] den[ies] an insured's claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee . . . has notified us prior to loss of any breach of warranty, foreclosure, change of ownership, occupancy, or substantial change of risk of which the mortgagee was aware prior to loss." JA 90. TFM argues that foreclosure is a process, and therefore, the Bank should have given notice before the beginning of that process. The Bank concedes that foreclosure is a process but argues that the word "foreclosure" is ambiguous because it can refer either to the beginning or end of the foreclosure process. The district court concluded that "foreclosure" is a process that occurs pursuant to several steps and thus "prior to foreclosure" means prior to the beginning of the foreclosure process.

On the one hand, there are several arguments for why "foreclosure" should be interpreted to mean the beginning of foreclosure proceedings. First, the contract required the Bank to notify TFM "prior to . . . foreclosure," JA 90, which, if foreclosure is a process (as both parties agree), naturally means prior to the beginning of foreclosure proceedings. For example, if one says "let's eat prior to the baseball game," the hungry person ordinarily does not mean "let's eat before the baseball game is finished," but instead, "let's eat before the baseball game begins." Also, if "prior to foreclosure"

meant "prior to the end of foreclosure proceedings," as the Bank insists, the phrase would have the strange meaning of "prior to some but not all of the foreclosure proceedings." TFM's reading results in the phrase meaning "prior to all foreclosure proceedings"—a meaning more consistent with the natural reading of the phrase.

Second, reading "prior to foreclosure" to mean "prior to the beginning of foreclosure proceedings" is more consistent with the apparent purpose of the contract provision, as suggested by the contract itself. The contract contains a list of events prior to which a mortgagee must notify TFM: "any breach of warranty, foreclosure, change of ownership, occupancy, or substantial change of risk." JA 90. These terms all share a potential increase of risk to TFM. What creates the substantial change of risk during foreclosure proceedings is the mortgagor's incentive to destroy the house intentionally to receive the proceeds of the insurance policy. This risk begins with the initiation of foreclosure proceedings and ends when the foreclosure process is complete. Thus, it makes sense that TFM would desire notice at the beginning of foreclosure proceedings, not at the end.

Finally, reading "foreclosure" to require notice prior to the end of foreclosure proceedings would read a redundancy into the contract. The insurance contract separately lists "change of ownership" as an event requiring notice to TFM, and the end of foreclosure includes a change of ownership.

On the other hand, there are also arguments for why "prior to foreclosure" should be interpreted to mean prior to the end of the foreclosure process. The word "foreclosure" sometimes refers simply to a foreclosure sale. TFM admitted as much at oral argument, agreeing that even lawyers sometimes refer to a foreclosure sale as "foreclosure." Similarly, there is statutory authority for such usage. For example, the Tennessee Code provides that "[i]n any sale of land to foreclose a deed of trust, mortgage, or other lien securing the payment of money or other thing of value, the trustee or person or entity holding a similar position may attend the foreclosure either in person or by an agent." Tenn. Code Ann. § 35-5-114. Also, the title to that provision is "Trustee's attendance at foreclosure." It is clear that "foreclosure" as used in this statute refers not to the initiation of foreclosure proceedings, but to the foreclosure sale. Thus, "foreclosure" is capable of two reasonable interpretations and therefore is ambiguous. *See Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993) ("Where language in an insurance policy is susceptible of more than one reasonable interpretation . . . it is ambiguous.").[4]

Although Tennessee insurance law states that "[w]here . . . ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured," *id.*, the Bank did not seek summary judgment on the issue of the meaning of the contract. It is therefore necessary only to reverse the district court's order granting summary

---

[4]TFM's argument that the Bank "is estopped from claiming that the terms of the mortgagee clause are ambiguous" because the Bank "never obtained a copy of the insurance policy" is without merit. TFM does not refer this court to any authority suggesting that an insured cannot collect under a valid insurance policy because the insured never obtained a copy of that policy.

judgment to TFM on the meaning of the contract because there exist, at a minimum, genuine issues of material fact as to the meaning of the contract, and remand the case for further proceedings.

If on remand the court determines that the Bank has met the notice requirement of the contract, it will not be necessary for the court to address the further question of whether Tennessee Code section 56-7-804 prohibits TFM from invalidating the Bank's claim. The district court held that the Bank contracted away any protection that section 56-7-804 might have provided, but the court did so based on the questionable premise that the Bank had contracted away the protection of a statutory provision that mandated that very contract provision. Contractual provisions mandated by statute cannot ordinarily be contracted around by the parties. *See Hermitage Health & Life Ins. Co. v. Cagle*, 420 S.W.2d 591, 594 (Tenn. Ct. App. 1967) ("It is a well established rule of law in this state that any statute applicable to an insurance policy becomes part of the policy and such statutory provisions override and supersede anything in the policy repugnant to the provisions of the statute." (citing *Johnson Transfer & Freight Lines v. Am. Nat'l Fire Ins. Co.*, 79 S.W.2d 587, 589 (Tenn. 1935)); *see also* 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 19:2 (3d ed. updated 2006). Neither TFM nor the district court cites authority for the power of the parties to contract out of the protections of section 56-7-804, and there is nothing in the language of this particular statute suggesting that parties may do so. In reversing, however, we do not rely in the alternative on section 56-7-804 to hold that the contractual language at issue is statutorily precluded from requiring notice in this case. There is a preliminary legal question that would have to be resolved in order to reach that conclusion, and the district court did not address it. Tennessee Code section 56-7-804 protects

against invalidation based on "any foreclosure," and some interpretation is required to extend the protection to invalidation based on lack of *notice* of a foreclosure. We therefore decline to resolve the issue today.

The judgment of the district court is reversed and remanded for proceedings consistent with this opinion.