IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 16, 2007 Session

## U.S. BANK, N.A., as servicer for the TENNESSEE HOUSING DEVELOPMENT AGENCY, v. TENNESSEE FARMERS MUTUAL INSURANCE COMPANY

An Appeal from the Circuit Court for Gibson County
No. H3496     Clayburn Peeples, Judge

---

No. W2006-02536-COA-R3-CV - Filed December 21, 2007

---

This is an insurance case. The plaintiff bank made a home loan to the homeowner and took a deed of trust as security. Under the loan agreement, the homeowner was required to obtain a fire insurance policy on the premises. The defendant insurance company issued a fire insurance policy covering the house. The policy contained a standard mortgage clause requiring the insurance company to protect the bank's interest and, in turn, requiring the bank to notify the insurance company of any increases in hazard. The homeowner fell behind on her monthly mortgage payments, so the bank initiated foreclosure proceedings. The bank sent a letter to the homeowner stating that it had begun foreclosure proceedings; it did not notify the insurance company of these proceedings. Before the foreclosure process was complete, the homeowner and her husband filed for bankruptcy, which stayed the foreclosure proceedings. Soon after that, the house was destroyed by a fire. The bank notified the insurance company of the loss. The insurance company refused to pay, asserting that the foreclosure proceedings constituted an increase in hazard of which the bank was required to notify the insurance company, and that the bank's failure to provide such notice constituted a breach of the mortgage clause in the fire insurance policy. The bank then sued the insurance company for breach of contract, bad faith refusal to pay an insurance claim, and violation of the Tennessee Consumer Protection Act. The bank later filed a motion for partial summary judgment, asserting that T.C.A. § 56-7-804 indicated that the bank was not required to provide notice to the insurance company of foreclosure proceedings. The insurance company filed a cross-motion for summary judgment, arguing that such notice was required under the policy or, in the alternative, under the statute. The trial court denied the insurance company's summary judgment motion but granted summary judgment to the bank. The insurance company appeals. We reverse, finding that the commencement of foreclosure proceedings constituted an "increase in hazard" under the standard mortgage clause in the insurance policy and an "increase of hazard" under T.C.A. § 56-7-804.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J. and DAVID R. FARMER, J., joined.

Charles L. Trotter, Huntingdon, Tennessee, for Appellant Tennessee Farmers Mutual Insurance Company

Michael F. Rafferty, Memphis, Tennessee, for Appellee U.S. Bank, N.A.

## OPINION

On February 12, 1999, Jessica Robbins purchased a home located in Gibson County, Tennessee. The servicer for her loan was Plaintiff/Appellee U. S. Bank, N.A. ("Bank"). The loan was secured by a Deed of Trust in favor of the Bank and the Bank was listed as the mortgagee for purposes of insurance coverage. Under the loan, the borrower obtained a Personal Fire and Extended Coverage Insurance Policy ("the policy") issued by Defendant/Appellant Tennessee Farmers Mutual ("Tennessee Farmers"). The policy was in effect during the time period in question, from February 12, 2003 to February 12, 2004. It contained a "standard mortgage clause" which stated as follows:

> **CONDITIONS APPLYING THROUGHOUT THIS POLICY**
> **. . .**
> **[Tennessee Farmers'] Duties**
> We will:
>> (a) protect the mortgagee's interest in the insured building. This protection ***will not be invalidated*** by any act or neglect of any insured person, breach of warranty, increase in hazard, change of ownership, or foreclosure ***if the mortgagee has no knowledge of these conditions***;
>> (b) give the mortgagee 10 days notice before cancelling this policy.
>
> **Mortgagee's [the Bank's] Duties**
> The mortgagee will:
>> (a) furnish proof of loss within 60 days if the insured person fails to do so;
>> (b) pay upon demand any premium due if the insured person fails to do so;
>> (c) notify us of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
>> (d) give us the right of recovery against any party liable for loss; but giving us this right will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim;
>> (e) after a loss, permit us to satisfy the mortgage requirements and receive full transfer of the mortgage.

Thus, under the policy, Tennessee Farmers agreed to protect the Bank's interest in the house and also agreed that the protection under the policy would not be invalidated based on a foreclosure if the Bank had no knowledge of the foreclosure. In turn, the Bank was required to notify Tennessee Farmers of a "change of ownership or occupancy or any increase of hazard" of which the Bank had knowledge.

In August 2000, Jessica Robbins married Zack Hill and apparently changed her name to Jessica Hill ("Hill"). Coincidentally, in August 2000, Hill began to miss the deadlines for her monthly mortgage payments to the Bank. From August 2000 through August 2002, Hill's financial condition steadily declined and she was increasingly behind on her mortgage payments. Finally, on August 22, 2002, after several attempts to work with Hill to remedy her situation, the Bank sent Hill a letter notifying her that foreclosure on her home had started and that commencement of foreclosure had been reported to a credit bureau. In another letter, also dated August 22, 2002, the Bank told Hill that it had contacted an attorney and had instructed him to begin foreclosure proceedings.

On September 5, 2002, the Bank's foreclosure attorney, I. Dyke Tatum ("Tatum"), notified Hill by letter that her deed of trust was soon to be foreclosed. On the same date, Tatum wrote Ed Wallis ("Wallis"), the substitute trustee in the foreclosure, and directed him to update his title search on the property before crying the foreclosure sale. On September 26, 2002, Tatum sent a letter to the Herald Gazette newspaper in Trenton, Gibson County, Tennessee, asking it to put a notice of foreclosure sale for Hill's home in the Gazette's October 9, October 16, and October 23, 2002 issues.

On October 1, 2002, Hill and her husband filed for bankruptcy under Chapter 13 of the Bankruptcy Code. The bankruptcy filing stayed the foreclosure proceedings pursuant to the automatic stay provisions. Consequently, the Bank's attorney closed his file on the foreclosure of Hill's deed of trust. *See* 11 U.S.C.A. § 362 (West 2006). At no point did the Bank or its agents notify Tennessee Farmers of the foreclosure proceedings or Hill's bankruptcy.

On April 12, 2003, Hill's home was destroyed by a fire.[1]

On September 30, 2003, the Bank, through its agent, submitted a claim to Tennessee Farmers under the insurance policy, based on the fire. Tennessee Farmers declined to pay the claim and apparently did not provide a reason for doing so at the time.

---

[1] The appellate record includes allegations that Hill's husband, Zack Hill, caused the fire while making methamphetamine.

On April 8, 2004, the Bank filed a lawsuit against Tennessee Farmers, alleging breach of contract, bad faith refusal to pay under Tennessee Code Annotated § 56-7-105(a),[2] and unfair or deceptive acts or practices under the Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated § 47-18-109(a)(1).[3] In its complaint, the Bank also asserted that Tennessee Code Annotated § 56-7-804 prohibited Tennessee Farmers from refusing to pay the Bank's claim based on the occurrence of a foreclosure.[4]

---

[2]T.C.A. § 56-7-105(a) states:

(a) The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

[3]T.C.A. § 47-18-109(a)(1) states:

(a)(1) Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

[4]T.C.A. § 56-7-804 states:

When any person shall, as trustee, mortgagee, assignee, or otherwise, possess or have any fire insurance policy on realty made payable to such person, or other person as that person's interest may appear, then such insurance as to the interest of the trustee, mortgagee, assignee or other person therein named shall not be invalidated by an act or neglect of the mortgagor owner of the property so insured, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by change in title or ownership of the property, nor by occupation of the premises for purposes more hazardous than are permitted by such policy; provided, that in case the mortgagor or owner neglect to pay any premium due under such policy, the mortgagee, trustee, assignee, or other person shall on demand, pay same; and provided further, that the mortgagee trustee, assignee, or other such person shall notify the insurance company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the mortgagee, trustee, assignee, or other such person, and unless permitted by the policy, it shall be noted thereon, and the mortgagee, trustee, assignee, or other person shall, on demand, pay the premium for such increased hazard for the term of the use thereof, or otherwise the policy shall be null and void; and provided further that in the event the insurer concludes to cancel its policy under its terms, then ten (10) days' notice of such determination shall be given to the mortgagee, trustee, assignee, or other person so interested.

In its answer to the Bank's complaint, Tennessee Farmers denied any breach of contract, and denied any violation of section 56-7-105(a), section 47-18-109(a)(1), or section 56-7-804 of the Tennessee Code. Further, Tennessee Farmers asserted counterclaims against the Bank. It alleged that, under Tennessee Code Annotated § 56-7-106,[5] the Bank's lawsuit was filed in bad faith and, that, under Tennessee Code Annotated § 47-18-109(e)(2), the Bank's lawsuit was frivolous.[6] Subsequently, the Bank filed a motion for partial summary judgment as to the effect of section 56-7-804. The Bank argued that, while section 56-7-804 required that the Bank provide notice to Tennessee Farmers of any "increase of hazard," the statute did not require the Bank to notify Tennessee Farmers of the commencement of foreclosure proceedings. *See* T.C.A. § 56-7-804 (2000). The Bank's motion for summary judgment also asserted that any part of the insurance policy that was inconsistent with section 56-7-804 should be declared unenforceable.

After a period of discovery, Tennessee Farmers filed its response to the Bank's summary judgment motion and contemporaneously filed a cross-motion for summary judgment. In its motion, Tennessee Farmers argued first that Tennessee Code Annotated § 56-7-804 did not apply to its relationship with the Bank because the Bank waived application of the statute when it agreed to the provisions of the insurance policy. Tennessee Farmers maintained that its relationship with the Bank was governed by the insurance policy, that the policy required the Bank to notify Tennessee Farmers of the foreclosure proceedings, and, furthermore, that its failure to do so voided the Bank's coverage under the insurance policy. Tennessee Farmers also sought summary judgment on the Bank's bad faith and TCPA claims, arguing that it had negated the essential elements of both claims.

The trial court held a hearing on the parties' cross-motions for summary judgment on October 2, 2006. It denied Tennessee Farmers' motion for summary judgment, but granted the Bank's motion for partial summary judgment as to the effect of section 56-7-804. This order was certified as a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. *See* Tenn. R. Civil P. 54.02. Tennessee Farmers then filed its appeal.

---

[5] T.C.A. § 56-7-106 states:

In the event it is made to appear to the court or jury trying the cause that the action of the policyholder in bringing the suit was not in good faith, and recovery under the policy is not had, the policyholder shall be liable to such insurance company, corporation, firm, or person in a sum not exceeding twenty-five percent (25%) of the amount of the loss claimed under the policy; provided, that such liability, within the limits prescribed, shall, in the discretion of the court or jury trying the cause, be measured by the additional expense, loss, or injury inflicted upon the defendant by reason of the suit.

[6] T.C.A. § 47-18-109(2) states:

(2) In any private action commenced under this section, upon finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may require the person instituting the action to indemnify the defendant for any damages incurred, including reasonable attorneys' fees and costs.

On appeal, Tennessee Farmers raises the following issues: (1) whether the trial court erred in ruling that Tennessee Code Annotated § 56-7-804 governed whether the Bank was required to notify Tennessee Farmers of the foreclosure proceedings in order to maintain coverage; (2) whether Tennessee Farmers conclusively established as an affirmative defense that the foreclosure proceedings constituted an "increase in hazard" under both the policy and the statute; (3) whether Tennessee Farmers had negated the essential elements of the Bank's bad faith claim under Tennessee Code Annotated § 56-7-105(a); and (4) whether Tennessee Farmers had negated the essential elements of the Bank's TCPA claim under Tennessee Code Annotated § 47-18-109(a)(1).

A motion for summary judgment should be granted when there are no genuine issues as to material facts and the moving party establishes that he is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. Appellate review of the trial court's decision on a motion for summary judgment involves a question of law. *Bain v. Wells*, 956 S.W.2d 618, 622 (Tenn. 1997). This appeal involves the interpretation of statutes and the interpretation of written agreements; these likewise are questions of law. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006); *Wilkins v. Kellogg Co.*, 48 S.W.3d 148, 151 (Tenn. 2001). Therefore, this appeal involves solely questions of law, which we review *de novo* on the record, according the trial court's decision no presumption of correctness. *Watson*, 195 S.W.3d at 611; *Wilkins*, 48 S.W.3d at 151.

Initially, in its motion for summary judgment, Tennessee Farmers argued that the insurance policy, not the statute, governed the dispute over whether the Bank was required to notify Tennessee Farmers of the commencement of foreclosure proceedings. Tennessee insurance law admits of a close interaction between private insurance agreements and Tennessee's insurance statutes. *See, e.g.*, T.C.A. § 56-7-121 (2006); *Sherer v. Linginfelter*, 29 S.W.3d 451, 453-54 (Tenn. 2000) ("The law is well-established that 'any statute applicable to an insurance policy becomes part of the policy and such statutory provisions override and supersede anything in the policy repugnant to the provisions of the statute.'") (quoting *Hermitage Health & Life Ins. Co. v. Cagle*, 420 S.W.2d 591, 594 (Tenn. Ct. App. 1967)). In light of this, we find that resolution of this appeal requires that we interpret both the insurance policy and the statute to determine if they are in accord. First, we examine the language in the insurance policy.

The relevant provision of the policy is commonly referred to as a "standard mortgage clause;" it sets forth the duties of both the Bank (the mortgagee) and Tennessee Farmers. A standard mortgage clause "[i]n effect . . . creates a separate contract between the insurer and the mortgagee." BLACK'S LAW DICTIONARY 1029 (7th ed. 1999).[7]

---

[7]The "standard mortgage clause" is to be contrasted with the "open mortgage clause," which is defined as

> A mortgage clause that does not protect the mortgagee if the insured mortgagor does something to invalidate the policy (such as committing fraud). This type of clause has been largely superseded by the mortgage-loss clause, which affords the mortgagee more protection.

BLACK'S LAW DICTIONARY 1029 (7th ed. 1999).

As set forth above, the insurance policy in this case provides that the Bank had an affirmative duty to "notify [Tennessee Farmers] of any change in ownership or occupancy or any increase in hazard of which [the Bank] has knowledge." Concomitantly, Tennessee Farmers agreed that it would "protect [the Bank's] interest in" Hill's home, and that the protection "will not be invalidated by any act or neglect" by an insured, "increase in hazard, change of ownership, or foreclosure if [the Bank] has no knowledge of these conditions." Our first task is to interpret this policy language to determine whether the Bank was required to notify Tennessee Farmers when it commenced foreclosure proceedings on Hill's home and, if so, whether the Bank's failure to do so invalidated its coverage for the fire loss.

"The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 678, 580 (Tenn. 1975) (citing *Petty v. Sloan*, 277 S.W.2d 355 (Tenn. 1955)). Furthermore, "[a]ll contractual provisions should be construed in harmony with each other . . . ." *City of Cookeville ex. rel. Cookeville Reg'l Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 904 (Tenn. 2004). "In construing a contract, the entire contract should be considered in determining the meaning of any or all its parts." *Cocke County Bd. of Highway Commissioners v. Newport Utilities Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985). Ambiguous language in an insurance policy must be construed against the insurer; however, this Court is not at liberty to find an ambiguity where none exists. *Compare Interstate Life & Accident Ins. Co. v. Gammons*, 408 S.W.2d 397, 445 (Tenn. Ct. App. 1966) *with Rogers v. First Tenn. Bank Nat'l Ass'n*, 738 S.W.2d 635, 637 (Tenn. Ct. App. 1987).

We first look at whether the Bank had a duty, under the policy, to notify Tennessee Farmers when it commenced foreclosure proceedings. Under paragraph (c) of the policy, the Bank had a duty to "notify Tennessee Farmers of any . . . increase in hazard of which [the Bank] has knowledge." In interpreting the phrase "increase in hazard," we must adopt the ordinary and reasonable meaning of the phrase in light of the context in which it was used. *See Edwards v. Travelers Indem. Co.*, 300 S.W.2d 615, 617 (Tenn. 1957); *Snelling & Snelling, Inc. v. Parnell*, 440 S.W.2d 23, 26-27 (Tenn. Ct. App. 1968).

The term "increase in hazard,"[8] in the context of insurance law is considered synonymous with "increase of risk of loss." 6 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 94:18 (3d ed. 1996). Generally, "Any change in the insured or the insured property that will increase the moral hazard—the risk, danger, or probability that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance—may also trigger an increase of risk provision."[9] *Id.* The treatise *Couch On Insurance* notes that the commencement of foreclosure

---

[8] The insurance policy in this case uses the phrase "increase *in* hazard" while Tennessee Code Annotated § 56-7-804 uses the term "increase *of* hazard." We do not see an appreciable difference in the two.

[9] Moral hazard is defined as a hazard that "has its inception in mental attitudes;" the phrase denotes a "risk that an insured will destroy the property or allow it to be destroyed (usu. by burning) in order to collect the insurance (continued...)

proceedings has been held to trigger an increase of risk provision: "It is generally conceded that foreclosure proceedings increase the insured's temptation to realize upon the property by destroying it and using the funds obtained to pay off the encumbrance, so that commencement of such proceedings makes the moral hazard an important consideration." *Id.* § 92.89; *contra* 44 AM. JUR. 2D *Insurance* § 1209 (2003).[10]

Courts from a number of jurisdictions have discussed whether the commencement of foreclosure proceedings constitutes an increase in hazard, and have reached different conclusions. Some have held that an increased risk of fire upon commencement of foreclosure proceedings cannot be presumed. In *Phenix Ins. Co. of Brooklyn, N.Y. v. Union Mut. Life Ins. Co. of Maine*, 101 Ind. 392 (1885), the insurance policy contained a provision that the mortgagee was required to notify the insurance company of "any . . . increase of hazard which shall come to his knowledge" and that the insurance company would be permitted to charge an increased rate for the increased hazard. *Id.* The insurance company argued that the commencement of the foreclosure proceedings "so greatly increased the risk of loss by fire to the property insured, as necessarily to avoid the contract of insurance." *Id.* The court rejected this argument, holding that:

> . . . if the [insurer] had desired to be notified of the commencement of foreclosure proceedings, or had supposed that the mere commencement of such proceedings would increase the hazard of the risk, it would have stipulated for such notice in direct terms in the mortgage clause.
>
> The courts can not assume that the mere commencement of the foreclosure proceedings, of itself, increased the hazard of the risk in the case before us to such an extent as would, in the absence of notice or consent, avoid the contract of insurance.

*Id.* Other courts have held that foreclosure was not the type of increase of hazard intended in the mortgage clause. In another case involving a mortgage clause that required notice to the insurer of "any . . . increase of hazard which shall come to the knowledge of said mortgagee," the court held that the "plain, ordinary meaning" of the words did not include an event such as foreclosure, but "refers rather in a general way to any physical condition that would make the risk more hazardous." *West v. Green*, 226 So.2d 302, 306-07 (Ala. 1969); *see also Trustees of Schools v. St. Paul Fire & Marine Ins. Co.*, 129 N.E. 567, 569 (Ill. 1921) (quoting *Liverpool & London & Globe Ins. Co. v. Lavine*, 59 So. 336 (Ala. Ct. App. 1912)).

_____

[9](...continued)
proceeds." BLACK'S LAW DICTIONARY (8th ed. 2004). The term "moral hazard" is contrasted with a physical hazard, which "has its inception in the material world." *Id.*

[10]While the Couch treatise also states, "[T]he foreclosure of a mortgage on the insured premises is not such an increase of hazard as requires notice to the insurer in order to protect the mortgagee," the weight of this statement is abrogated by the language in the policy that U.S. Bank should notify Tennessee Farmers of "*any* increase in hazard." 6 RUSS & SEGALLA § 94:21.

In contrast, courts in other jurisdictions have stated that the commencement of foreclosure proceedings triggers a well-recognized increase in hazard. Many of these cases have involved mortgage clauses which expressly required notice to the insurer upon the "commencement of foreclosure proceedings." Nevertheless, the reasoning used by these courts is instructive. In *Peterson v. Hudson Ins. Co.*, 15 P.2d 249 (Ariz. 1932), the insurance policy stated that it would become void if "with the knowledge of the insured, foreclosure proceedings be commenced . . . ." *Id.* at 250. Foreclosure proceedings on the insured property were commenced and in fact a judgment of foreclosure was entered. The property was then destroyed by fire. *Id.* The court then considered the issue of whether commencement of the foreclosure proceedings rendered the policy void "unless reaffirmed by the insurer." *Id.* The court held that it did, reasoning: "The temptation to destroy the property and with the funds derived from existing insurance thereon to pay off the mortgage demand is multiplied fourfold when legal proceedings are actually instituted, and the final loss of the entire property to the mortgagor thereby becomes imminent." *Id.* at 251. The *Peterson* court found that the trigger for the increase in hazard was the insured's knowledge that foreclosure proceedings had actually been commenced:

> The reason for inserting [such clauses in insurance policies] is the increased danger to the property, which human experience shows to accrue whenever foreclosure proceedings are started. It is not just that the insurer, having taken the risk for a certain price under certain conditions, should be forced to continue to carry the insurance when the risk is greatly increased, unless it has knowledge of that increased risk and acquiesces therein. The increased risk of fire does not accrue until such time as the insured has knowledge that the foreclosure proceedings have actually been commenced, and that he is about to lose his property. Such being the case, we think that the policy becomes void at such time after the suit is actually filed as the insured knows of its existence, unless the insurer, with knowledge of the changed conditions, either waives the clause in question or is estopped from asserting it.

*Id.* at 252. In *Hole v. Nat'l Fire Ins. Co. of Hartford, Conn.*, 252 P. 263 (Kan. 1927), the Kansas court interpreted a similar mortgage clause. It also stated that the commencement of foreclosure proceedings increased the hazard, using similar reasoning as that employed in *Peterson*:

> The reason for a provision for forfeiture on commencement of foreclosure is increase of hazard. Experience has taught insurance companies that, when property owners become financially unable to take care of their secured obligations, or are so neglectful of them that the foreclosure must be resorted to, likelihood of fire becomes greater.
>
> * * *
>
> Hazard is increased by commencement of foreclosure[;] . . . the owner's interest is a step nearer extinction, and it may please Providence that there shall be a fire and some insurance money to apply on the debt.

*Id.* at 264-65; *see also, e.g., Neil Bros. Grain Co. v. Hartford Fire Ins. Co.*, 1 F.2d 904, 907 (9th Cir. 1924) ("It is universally recognized in insurance law . . . that the hazard is increased by a mortgage of the property insured, and still further increased by the commencement of proceedings to foreclose."); *Newark Fire Ins. Co. v. Pruett*, 227 P. 823, 823 (Colo. 1924) ("Foreclosure proceedings increase the hazard."). Thus, these courts reason that when the insured is notified of the commencement of foreclosure proceedings, the risk of a "providential" fire increases.

The Bank argues that the commencement of foreclosure proceedings does not constitute an increase in hazard, and cites *Anderson v. Kentucky Growers Ins. Co., Inc.*, 105 S.W.3d 462 (Ky. Ct. App. 2003). In *Anderson*, the mortgage clause in the insurance policy stated that the insurance company's denial of the insured's claim would not apply to a claim of the mortgagee if the mortgagee had notified the insurer of a "substantial change in risk of which the mortgagee become aware . . . ." *Id.* at 464. The mortgagee filed a foreclosure action in court in March 2001, apparently without notifying the insurer. *Id.* at 463. The house was destroyed by fire in April 2001. *Id.* The insurance company argued that the filing of foreclosure proceedings constituted a "substantial change in risk of which the mortgagee became aware." Noting that insurance contracts are to be liberally construed in favor of the insureds, the *Anderson* court held: "While we agree that the filing of foreclosure proceedings constitutes a 'change of risk,' we do not agree that such a change is necessarily 'substantial.' " *Id.* at 466. The court concluded that the policy did not "clearly and unambiguously" require the mortgagee to give the insurer notice of the filing of foreclosure proceedings. *Id.*

Thus, the *Anderson* court held that the commencement of foreclosure proceedings, while certainly a "change of risk," did not constitute a "*substantial* change of risk" within the meaning of the mortgage clause. We note, however, that the mortgage clause in this case requires notification of "any" increases in hazard, not limited to "substantial" increases in hazard.

The Bank also cites *Provident Bank v. Tenn. Farmers Mut. Ins. Co.*, 234 F. App'x 393 (6th Cir. 2007), in which the Sixth Circuit interpreted a standard mortgage clause somewhat similar to the provision at issue in this case. *Provident Bank*, 234 F. App'x at 396. In *Provident Bank*, the mortgage clause stated that the insurer could not deny a valid claim by the mortgagee if the mortgagee had notified the insurance company "prior to loss of . . . foreclosure . . . or substantial change of risk of which the mortgagee was aware prior to loss." *Id.* The homeowners became delinquent and foreclosure proceedings were commenced. The homeowners filed for bankruptcy protection, which stayed the foreclosure proceedings. The insurance company was not notified of these events. The property was then destroyed by fire. The mortgagee filed a claim, which was denied by the insurance company, based on the mortgage clause in the policy. *Provident Bank v. Tenn. Farmers Mut.*, No. 04-1017-T-AN, 2006 WL 565921, at *1-2 (W.D. Tenn. Mar. 6, 2006).

The district court held that the mortgagee's initiation of proceedings amounted to "foreclosure" within the meaning of the mortgage clause. *Id.* at *4.[11]

The appellate court reversed the holding of the district court, finding that the term "foreclosure" in the mortgage clause was ambiguous, and could have meant the commencement of foreclosure proceedings or the conclusion, *i.e.*, the foreclosure sale.[12] ***Provident Bank***, 234 F. App'x at 394. During the course of its discussion of the interpretation of the term "foreclosure," the Sixth Circuit noted the other items of which the mortgagee was required to notify the insurance company, including a "substantial change of risk." The Sixth Circuit observed:

> These terms all share a potential increase of risk to [the insurer]. What creates the substantial change of risk during foreclosure proceedings is the mortgagor's incentive to destroy the house intentionally to receive the proceeds of the insurance policy. This risk begins with the initiation of foreclosure proceedings and ends when the foreclosure process is complete.

*Id.* at 397. The Sixth Circuit therefore reversed the holding of the district court. *Id.* at 398.

In light of this caselaw, we consider the appropriate interpretation of paragraph (a) of the policy, the standard mortgage clause at issue in this case. Overall, the provision is structured to protect the mortgagee from invalidation of the insurance policy due to the actions of the insured.[13] In consideration for this protection against invalidation of the policy, the mortgagee has a duty to

---

[11]Interpreting Tennessee Code Annotated § 56-7-804, the district court also held that the commencement of foreclosure proceedings did not constitute an "increase of hazard." ***Provident Bank***, 2006 WL 565921, at *6. The district court relied on two older Tennessee cases discussed *infra*, ***S. Ins. Co. v. Estes***, 106 Tenn. 472, 62 S.W. 149 (Tenn. 1901), and ***Phila. Fire & Marine Ins. Co. v. Fields***, 13 Tenn. App. 485 (Tenn. Ct. App. 1931).

[12]We note that, on remand, the district court in ***Provident Bank*** found that the term "foreclosure" meant the *conclusion* of foreclosure proceedings, not the commencement of the process. ***The Provident Bank d/b/a PCFS Mortgage Resources v. Tenn. Farmers Mut. Ins. Co.***, No. 04-1017-T-An, at 6 (W.D. Tenn. Dec. 5, 2007).

[13]Invalidating or voiding an insurance policy under its terms is different from cancellation of the policy by the insurer. The treatise *Couch On Insurance* discusses the circumstances under which an insurance policy may be invalidated or voided:

> A change of, or in the use of, the property after the contract of insurance has been entered into, which temporarily increases the hazard, *suspends* the insurance *during its continuance*. But a temporary change *which ceases before loss* does not avoid liability unless the policy contains a stipulation or condition to that effect . . . .

6 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 94:16 (3d ed. 1996) (citations omitted) (emphasis added). Thus, a policy may be invalidated under certain circumstances if a loss occurs in a period during which the hazard associated with the property is materially increased. On the other hand, a policy of insurance can generally be cancelled at any time, with appropriate notice, even in anticipation of a loss. *See* 2 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 31:12 (3d ed. 1996) ("Where the insurer has the right to cancel the contract upon notice, its right to do so is *not affected* by the fact that a loss under the policy is a circumstance that might be anticipated.").

-11-

notify the insurer of conditions that could increase the level of risk associated with the property. The insurance company expressly retains the right to cancel the policy, with proper notice to the mortgagee. Presumably the insurer also retains the right to increase the premiums if it receives notice of conditions that affect the risk of loss, so that the premium rate is commensurate with the level of risk the insurer has agreed to assume.

With the structure of the standard mortgage clause in mind, we turn to interpretation of the term "increase in hazard," used in the list of conditions that the mortgagee is required to report to the insurer, as well as in the list of conditions listed as exceptions to the insurer's promise not to invalidate the protection of the mortgagee's interest in the insured property. The issue is whether the commencement of foreclosure proceedings constitutes an "increase in hazard," which the mortgagee is required to report to the insurer or risk invalidation of its protection under the policy. We are mindful of the caselaw finding that the initiation of foreclosure proceedings is not necessarily an "increase in hazard," reasoning that the insurer could have explicitly used the phrase "commencement of foreclosure" if that was its intent. Nevertheless, we are persuaded by the numerous cases observing that the increase in hazard associated with the initiation of foreclosure proceedings is "universally recognized." *Neil Bros. Grain*, 1 F.2d at 907. We agree with the Sixth Circuit's observation in *Provident Bank* that the initiation of foreclosure proceedings creates a substantial increase in the risk of fire loss because it gives the financially delinquent insured "incentive to destroy the house intentionally to receive the proceeds of the insurance policy" to apply against his debt. *Provident Bank*, 234 F. App'x at 397. Certainly an increased risk of fire arises at "such time as the insured has knowledge that the foreclosure proceedings have actually been commenced, and that he is about to lose his property." *Peterson*, 15 P.2d at 252. Under the mortgage clause, the Bank had a duty to notify Tennessee Farmers of the "increase in hazard" when it informed Hill that it was initiating foreclosure proceedings. Likewise, because the Bank did not notify Tennessee Farmers of this fact, this would fall under the stated exception to Tennessee Farmers' assurance that the Bank's protection under the policy would not be invalidated "by any . . . increase in hazard . . . if [the Bank] has no knowledge of [this] condition[] . . . ."

Our analysis does not end there. We must also interpret the language of Tennessee Code Annotated § 56-7-804 to determine whether Tennessee Farmers was prohibited from declining to pay the Bank's claim.

As with the language in the standard mortgage clause, Tennessee Farmers argues that the statutory phrase "increase of hazard" includes the commencement of foreclosure proceedings, and that the Bank's failure to notify Tennessee Farmers of its commencement of foreclosure proceedings against Hill meant that the policy coverage of the Bank's interest in the subject property was invalidated. In response, the Bank contends that the phrase "increase of hazard" does not include the commencement of foreclosure proceedings, and that the statute clearly prohibits Tennessee Farmers from invaliding the insurance policy based on the Bank's commencement of foreclosure proceedings. In the alternative, the Bank argues that, under the statute, Tennessee Farmers could not have invalidated the policy coverage of the Bank's interest even if the Bank had notified Tennessee Farmers of the foreclosure proceedings.

Section 56-7-804 provides:

> When any person shall, as . . . mortgagee . . . possess or have any fire insurance policy on realty made payable to such person, or other person as that person's interest may appear, then such insurance as to the interest of the . . . mortgagee . . . shall not be invalidated by an act or neglect of the mortgagor owner of the property so insured, *nor by any foreclosure or other proceedings* or notice of sale relating to the property, nor by change in title or ownership of the property, nor by occupation of the premises for purposes more hazardous than are permitted by such policy; . . . *provided . . . that the mortgagee . . . shall notify the insurance company of any change of ownership or occupancy or increase of hazard* which shall come to the knowledge of the mortgagee . . . and provided further, that in the event the insurer concludes to cancel the policy under its terms, then ten (10) days' notice of such determination shall be given to the mortgagee . . . .

T.C.A. § 56-7-804 (2000) (emphasis added). Thus, the structure of the statute somewhat parallels the structure of the standard mortgage clause in the policy. The statute states that fire insurance protection of the mortgagee's interest in the insured property "shall not be invalidated" by an act of the insured or by foreclosure proceedings. However, it includes an express proviso that the mortgagee must notify the insurance company "of any . . . *increase of hazard* which shall come to the knowledge fo the mortgagee . . . ." As with the standard mortgage clause, the insurance company retains the right to cancel the policy with appropriate notice. We must now construe the statute as it applies to the facts of this case.

"The primary rule in statutory construction is to ascertain and give effect to legislative intent as expressed . . . ." 23 TENN. JUR. *Statutes* § 23 (2007) (citing *State ex rel. Bastnagel v. City of Memphis*, 457 S.W.2d 532 (Tenn. 1970)). "In seeking to ascertain legislative intent, a statute should be read as a whole, not in parts." *Pearson v. Hardy*, 853 S.W.2d 497, 500 (Tenn. Ct. App. 1992) (citing *James Cable Partners v. Jamestown*, 818 S.W.2d 338, 342 (Tenn. Ct. App. 1991)). To ascertain intent of the Legislature, we must assume that it "used each word in a statute purposely and that the use of the words conveys some intent and has a meaning and a purpose." *Mayhew v. Mayhew*, 376 S.W.2d 324, 327 (Tenn. Ct. App. 1963). "A statute that might appear to be vague on its face may be saved by a narrowing judicial interpretation." 23 TENN. JUR. *Statutes* § 25 (2007) (citing *Moore v. Newell*, 401 F. Supp. 1018 (E.D. Tenn. 1975), *aff'd*, 548 F.2d 671 (6th Cir. 1977)). "In the interpretation of statutes, courts may ascertain the meaning of words by context." *Id.* (citations omitted).

We consider first the Bank's argument that the statute did not mandate notice to Tennessee Farmers of the commencement of foreclosure proceedings because, even had such notice been provided, Tennessee Farmers was prohibited from invalidating the policy. The Bank essentially argues that Tennessee Farmers cannot show that it was damaged due to the lack of notice of the initiation of foreclosure proceedings.

If we were to consider in isolation the statutory phrase "such insurance as to the interest of the . . . mortgagee . . . shall not be invalidated by . . . any foreclosure or other proceedings . . .," then we might agree with the Bank's argument. We must, however, read the statute "as a whole, not in parts." **Pearson**, 853 S.W.2d at 500. The statute clearly places a duty on the mortgagee to notify the insurance company of "any . . . increase of hazard." Moreover, the statute refers explicitly to the insurer's retained right to cancel the policy with appropriate notice. We must infer from this that the insurer is not "stuck" with the policy no matter what. Thus, had the Bank provided notice to Tennessee Farmers of the commencement of foreclosure proceedings before the house was destroyed, section 56-7-804 indicates that Tennessee Farmers could have cancelled the policy with ten days' notice. Conversely, had the Bank provided notice of the initiation of foreclosure proceedings and Tennessee Farmers chose *not* to cancel the policy, then Tennessee Farmers would have been precluded from claiming that the commencement of foreclosure proceedings invalidated the insurance. Therefore, we reject the Bank's contention that it had no duty to notify Tennessee Farmers of the initiation of foreclosure proceedings because Tennessee Farmers had no option under the statute except to maintain coverage.

We now turn to the issue of whether the Bank was under a statutory duty to provide Tennessee Farmers notice of the commencement of foreclosure in order to avoid invalidation of the insurance coverage. The Bank cites two Tennessee cases in this area, and argues that these cases control the outcome of this appeal. The first is the Tennessee Supreme court's decision in **S. Ins. Co. v. Estes**, 62 S.W. 149 (Tenn. 1901). In **Estes**, foreclosure proceedings were commenced against the insured, and the insurer was not notified of this fact. The property was then destroyed by fire. The insurance policy contained a provision stating that the policy would be void if foreclosure proceedings were commenced. In response to the lienholder's claim under the policy, the insurer asserted that the policy was voided by the initiation of foreclosure proceedings.

When **Estes** was decided in 1901, Tennessee Code Annotated § 56-7-804 had not yet been enacted.[14] Based on the common law, the **Estes** Court held that the commencement of foreclosure on the property could not "vitiate" the insurance. The Bank argues that **Estes** dictates the result in this case. We must respectfully disagree. Obviously **Estes** did not interpret section 56-7-804, because it was decided well before the statute was enacted. Our Supreme Court has stated, "It is well settled that a statute will not be construed to alter the common law, further than the act expressly declares or than is necessarily implied from the fact that it covers the whole subject-matter." **Olsen v. Sharpe**, 235 S.W.2d 11, 12 (Tenn. 1950).

Moreover, the language in section 56-7-804 is contrary to the reasoning utilized in **Estes**. In **Estes**, the insurance policy contained a clause stating that the policy would be void if the insured's interest in the property was anything other than unconditional sole ownership, or if foreclosure

---

[14]The predecessor to Tennessee Code Annotated § 56-7-804 was enacted in 1925; the statutory language is largely unchanged. **See** 1925 Tenn. Pub. Acts 402.

-14-

proceedings were commenced.[15] The insured property was, in fact, encumbered by a vendor's lien, and the lienholder initiated foreclosure proceedings prior to the fire that destroyed the property. The insurance company asserted that the policy was void under the clause.

The *Estes* Court first cited prior caselaw involving insurance policies with similar clauses, in which it was held that failure to disclose facts such as a mortgage, a vendor's lien or other encumbrance did not void the policy, because the fact that the property was encumbered was not material to the insurer's risk. *Id.* at 150 (citing *Delahay v. Memphis Ins. Co.*, 27 Tenn. (8 Hum.) 684 (1848); *The Manhattan Ins. Co. v. Barker*, 54 Tenn. (7 Heisk.) 503, 504 (1872); *Franklin Fire Ins. Co. v. Crockett*, 75 Tenn. 725 (1881)). The Court stated that if an undisclosed mortgage did not invalidate the policy, then the commencement of foreclosure proceedings should likewise not void the policy, notwithstanding the clause in the policy. The Court observed that foreclosure is the remedy for nonpayment of a mortgage, and is "incident of the mortgage," and so should likewise not void the insurance policy even if it results in a change in the ownership of the property. *Id.* at 150-51.

Thus, *Estes* held that, despite a clause in the insurance policy voiding the policy in the event of an undisclosed mortgage or the commencement of foreclosure proceedings, such a clause would not be enforced because these facts did not affect the insurer's risk. In contrast, section 56-7-804, while protecting the mortgagee from invalidation of the insurance policy, clearly places on the mortgagee the duty to notify the insurance company of "any *change of ownership* or occupancy or increase of hazard . . . ." T. C. A. § 56-7-804 (2000) (emphasis added). It explicitly makes the statutory protection of the mortgagee's interest contingent on the mortgagee's discharge of this duty, stating that the insurance as to the mortgagee's interest shall not be invalidated "provided . . . that the mortgagee" so notifies the insurance company. Thus, section 56-7-804 is plainly contrary to the Court's reasoning in *Estes* and was obviously intended to supersede *Estes* and the cases on which *Estes* relied. Therefore, *Estes* does not control the result in this case.

The Bank also cites *Phila. Fire & Marine Ins. Co. v. Fields*, 13 Tenn. App. 485, 1931 WL 1538 (1931), decided after the predecessor to section 56-7-804 was enacted. In *Fields*, the lienholder asserted a claim under an insurance policy after the subject property was destroyed by fire. The insurance company asserted that the policy was void because the lienholder had instituted proceedings to foreclose on the property "and failed to notify the Insurance Company of such foreclosure proceedings." *Id.* at *3.

---

[15]The policy stated:

This entire policy . . . shall be void . . . if the interest of the insured be other than unconditional or sole ownership . . . or if, with knowledge of the insured, foreclosure proceedings be commenced, with notice given of sale of any property covered by the policy by virtue of any mortgage or trust deed.

*Estes*, 62 S.W. at 149.

The *Fields* court first relied on *Estes* for the proposition that the institution of foreclosure proceedings does not operate to render an insurance policy void. *Id.* It then cited the predecessor to section 56-7-804, and stated that, despite the fact that the lienholder had instituted foreclosure proceedings, "he was not required by [the statute] to notify the Insurance Company of that fact. He was only required to notify it of any change of ownership or occupancy or increase of hazard which should come to his knowledge." *Id.*

The Bank argues that the appellate court in *Fields* was "dismissive" of the argument made by Tennessee Farmers in this case, and notes that the district court in *Provident Bank* relied on *Fields* to hold that the institution of foreclosure proceedings is not an "increase of hazard" under section 56-7-804. Indeed, the district court in *Provident Bank* stated that *Fields* "implicitly held that the institution of foreclosure proceedings was not an increase of hazard." *Provident Bank*, 2006 WL 565921 at *4.[16]

With due respect to the district court in *Provident Bank*, we disagree with its interpretation of *Fields*. From our reading of *Fields*, there is no indication that the issue of whether the commencement of foreclosure proceedings constituted an increase of hazard was ever raised or considered. Moreover, the *Fields* court clearly relied on *Estes*, which we conclude was superseded by the enactment of the predecessor to section 56-7-804. Thus, we must find that *Fields* does not address the issue presented in this appeal.

For the reasons set forth in our discussion of the standard mortgage clause, we conclude that the commencement of foreclosure proceedings constitutes an "increase of hazard" under section 56-7-804. It is not a new phenomenon for a property owner, faced with the spectre of foreclosure, to decide that "it may please Providence that there shall be a fire and some insurance money to apply on the debt." *Hole*, 252 P. at 264-65. Several of the cases noting that the commencement of foreclosure proceedings increases the risk of fire were decided in the same time period as the enactment of the act of 1925, the predecessor to section 56-7-804. *See, e.g., Neil Bros. Grain Co. v. Hartford Fire Ins. Co.*, 1 F.2d 904, 907 (9th Cir. 1924); *Newark Fire Ins. Co. v. Pruett*, 227 P. 823 (Colo. 1924); *Hole v. Nat'l Fire Ins. Co. of Hartford, Conn.*, 252 P. 263, 264 (Kan. 1927). Likewise, recent cases recognize that an insured faced with imminent foreclosure has an "incentive to destroy the house intentionally to receive the proceeds of the insurance policy." *Provident Bank*, 234 F. App'x at 397. In light of this "human experience," we find that the Bank had a duty under section 56-7-804 to notify Tennessee Farmers when it informed Hill of the commencement of foreclosure proceedings, as this was an "increase of hazard." The statutory protection against invalidation of the policy was expressly contingent on the Bank's discharge of this duty. Because the Bank failed to notify Tennessee Farmers when it informed Hill that it was initiating foreclosure proceedings, section 56-7-804 does not prevent invalidation of the protection of the Bank's interest under the policy.

---

[16]The Sixth Circuit in *Provident Bank* did not reach this issue. *Provident Bank*, 2007 WL 1296033, at *4.

The remaining issues raised on appeal are whether the trial court erred in denying Tennessee Farmers' motion for summary judgment as to the Bank's bad faith and TCPA claims. Our holding above pretermits these two remaining issues.

In sum, we interpret both the standard mortgage clause in the insurance policy and Tennessee Code Annotated § 56-7-804 consistently. We hold that the commencement of foreclosure proceedings constitutes an "increase in hazard" under the standard mortgage clause. Likewise, the commencement of foreclosure proceedings constitutes an "increase of hazard" under section 56-7-804. The Bank failed to notify Tennessee Farmers when it informed the insured that it was initiating foreclosure proceedings, so, consequently, the Bank is not protected from invalidation of the protection of its interest in the policy by the terms of either the standard mortgage clause or the statute. Accordingly, we must conclude that the trial court erred in granting the Bank's motion for partial summary judgment and in denying Tennessee Farmers' motion for summary judgment. This decision must be reversed.

The decision of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this Opinion. Costs of this appeal are taxed to Appellee U. S. Bank , for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE