# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3534
_____

Hiscox Dedicated Corporate Member, Limited

*Plaintiff - Appellee*

v.

Suzan E. Taylor

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: September 20, 2022
Filed: November 15, 2022

_____

Before LOKEN, ARNOLD, and KOBES, Circuit Judges.

_____

ARNOLD, Circuit Judge.

After Suzan Taylor's Arkansas home burned to the ground, her insurer, Hiscox Dedicated Corporate Member Limited (a "capital provider" to an underwriting syndicate doing business within the Lloyd's of London insurance marketplace), declined to pay her for her loss and instead rescinded the insurance policy because she had made material misrepresentations in her insurance application. Hiscox then

sued Taylor in federal court, seeking a declaratory judgment that it had properly rescinded the policy and had no obligation to Taylor. The district court agreed with Hiscox and granted it summary judgment on the ground that Taylor had misrepresented that she had not had a foreclosure during the past five years, and, had Taylor disclosed that foreclosure proceedings had been commenced against her home, Hiscox would not have issued the policy. Taylor appeals the district court's grant of summary judgment. We reverse and remand.

Taylor obtained the insurance policy with the help of an independent insurance agent. Taylor and her agent completed what Hiscox calls "an industry standard ACORD application form, which is used by retail agents to seek quotes from various insurers and wholesale brokers." The form contained a question that asked, in all capital letters, if the "applicant had a foreclosure, repossession, bankruptcy or filed for bankruptcy during the past five (5) years." Taylor answered no. After receiving Taylor's application, another entity with authority to issue the policy did so on Hiscox's behalf.

Only six days before Taylor submitted her application, however, her mortgagee had filed a "Notice of Default and Intention to Sell," which set a specific date and time when it planned to sell Taylor's home. A lawyer representing Taylor had corresponded with the mortgagee before Taylor submitted her insurance application. Taylor did not disclose these events to Hiscox. She eventually reached an agreement with the mortgagee, and her home was not sold.

A fire destroyed Taylor's home about six months after the policy went into effect. Taylor submitted a claim under the policy, but Hiscox discovered during its investigation of the claim that she had not disclosed the foreclosure proceedings despite the question in her application that asked her if she had had a foreclosure. So Hiscox rescinded the policy *ab initio* and did not pay Taylor's claim.

After Hiscox sued her for declaratory judgment, Taylor asserted counterclaims against Hiscox for breach of contract, bad faith, and improper rescission. Both parties eventually moved for summary judgment on whether Taylor's response to the application's question about foreclosure was a material misrepresentation entitling Hiscox to rescind the policy as a matter of law. In siding with Hiscox, the district court held that the question was "unambiguous because the filing of the foreclosure against the Residence obviously constituted a foreclosure." It explained that "[t]he property was in the process of being foreclosed upon and that fact should have been disclosed on the Application, even if Taylor's plan was to cure her default."

"We review the district court's resolution of cross-motions for summary judgment *de novo*." *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649, 652 (8th Cir. 2022). Arkansas substantive law applies in this diversity case, *see id.*, and under that law an insurer may rescind an insurance policy if the policyholder made a material misrepresentation on the application, even if the misrepresentation is unrelated to the loss sustained. *See Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016). Insurance policies are interpreted "in favor of the insured and strictly against the insurer," *see Allstate Ins. Co. v. Burrough*, 120 F.3d 834, 838 (8th Cir. 1997), a rule that the parties appear to presume applies, we think correctly under Arkansas law, to applications for insurance as well. *See Phelps v. U.S. Life Credit Life Ins. Co.*, 984 S.W.2d 425, 428 (Ark. 1999). So where the language used "is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted." *See U.S. Fid. & Guar. Co. v. Cont'l Cas. Co.*, 120 S.W.3d 556, 560 (Ark. 2003). But where the language is clear and unambiguous, courts must apply the policy as written and not rewrite it to favor the insured. *See Allstate*, 120 F.3d at 838.

The relevant question is whether Taylor "had a foreclosure, repossession, bankruptcy or filed for bankruptcy during the past five (5) years." Taylor maintains

that the district court erred in concluding that the phrase "had a foreclosure" meant the initiation of foreclosure proceedings. She says that the phrase "had a foreclosure" unambiguously refers to a foreclosure sale, or, at a minimum, that the question is ambiguous and so should be construed in her favor. Hiscox, on the other hand, agrees with the district court that the term "foreclosure" refers unambiguously to the institution of foreclosure proceedings.

We agree with Taylor that the question is ambiguous. Under Arkansas law we are to read the question in its "plain, ordinary, and popular sense," as "the common usage of terms should prevail." *See ProAssurance Indem. Co. v. Metheny*, 425 S.W.3d 689, 703 (Ark. 2012). The term "foreclosure" commonly means different things depending on the context in which it appears. Sometimes people use the word "foreclosure" to mean the foreclosure sale itself, which is the event that terminates or "forecloses" someone's rights to property. The word can also reasonably mean the process leading up to that sale.

We are not alone in this view. *See Provident Bank v. Tenn. Farmers Mut. Ins. Co.*, 234 F. App'x 393 (6th Cir. 2007) (unpublished). There, both the homeowners and their mortgagee were listed as insureds on a home-insurance policy. The insurance agreement told the mortgagee that, if the insurer denied a claim from the homeowners, that denial would not apply to a valid claim from the mortgagee if the mortgagee had notified the insurer "of any . . . foreclosure" that the mortgagee was aware of before the loss. After the mortgagee initiated foreclosure proceedings against the homeowners, the home burned down and the mortgagee filed a claim with the insurer; but the insurer rejected it because the mortgagee had not told the insurer about the commencement of foreclosure proceedings. *See id.* at 394–95. The Sixth Circuit held that the term "foreclosure" was ambiguous. *See id.* at 394. It observed, as do we, that "[t]he word 'foreclosure' sometimes refers simply to a foreclosure sale," and so it "is capable of two reasonable interpretations and therefore is ambiguous." *See id.* at 397.

Hiscox wants us to distinguish *Provident Bank* on the ground that the court there adverted to Tennessee statutes to support its conclusion, whereas Arkansas statutes, Hiscox asserts, support its view. It maintains that Arkansas statutes refer to a foreclosure as a legal proceeding. For example, it cites a statute stating that a "mortgagee may not initiate a foreclosure" unless certain conditions are met, such as the giving of notice. *See* Ark. Code Ann. § 18-50-103. It cites another statute that dictates the contents of a mortgagee's notice of default and intention to sell, including a requirement that the notice state "[t]he default for which foreclosure is made" and the contact information "of the party initiating foreclosure." *See id.* § 18-50-104(b)(4), (7). It also points out that "Arkansas statutes define and use the term 'sale' to reference the sale, and use the term 'foreclosure' without 'sale' to refer to the statutory process prior to the sale."

We don't think Hiscox's reliance on Arkansas statutes carries the day. For one thing, the fact that the *Provident Bank* court adduced Tennessee statutes to support its conclusion that the term "foreclosure" was ambiguous does not mean that, without those statutes, the court's conclusion would have been different. We agree with *Provident Bank* that the term "foreclosure" "sometimes refers simply to a foreclosure sale," *see* 234 F. App'x at 397, regardless of whether the statutes in the jurisdiction where the contract was entered do as well.

Second, it appears that relevant Arkansas statutes sometimes cut against Hiscox's position. As Taylor points out, an Arkansas statute also says that, if the mortgagee follows the proper procedures, its sale of property "shall foreclose and terminate" the mortgagor's interest in the property. *See* Ark. Code Ann. § 18-50-108(a)(1). So it doesn't seem like much of a stretch for someone to refer to that occurrence as the "foreclosure."

Third, and perhaps most important, we see no indication in any case that the parties meant to adopt Arkansas statutes as the standard to determine the meaning of

the words in the application question. The question on its face does not refer to Arkansas statutes, and neither party has directed us to a different part of the application to suggest that the meaning of "foreclosure" was meant to track Arkansas (or any other state's) statutes. Keeping in mind that the "first rule" of contract interpretation in Arkansas "is to give to the language employed the meaning that the parties intended," *see Couch v. Farmers Ins. Co.*, 289 S.W.3d 909, 913 (Ark. 2008), we see no reason to believe that the parties intended Arkansas statutes to be relevant in deciding what the parties meant when they used the term "foreclosure."

Hiscox emphasizes in its brief that "foreclosure" is a process. It cites Black's Law Dictionary, which defines "foreclosure" as a "legal proceeding to terminate a mortgagor's interest in property, instituted by the lender (the mortgagee) either to gain title or to force a sale in order to satisfy the unpaid debt secured by the property." *Foreclosure*, Black's Law Dictionary (11th ed. 2019). We take no issue with that definition. The difficulty for Hiscox, however, is that it is unclear whether the application was asking about the commencement of that process or its completion by sale. *See Provident Bank*, 234 F. App'x at 396. And so we are not much moved by Hiscox's argument that Black's Law Dictionary describes foreclosure as a process.

Hiscox identifies a case that it says supports its position that the application question was unambiguously referring to the commencement of a foreclosure process. *See Buford v. S. Pioneer Prop. & Cas. Ins. Co.*, No. 06-1076-T/An, 2007 WL 9709924 (W.D. Tenn. Aug. 6, 2007). There a homeowner answered "no" on an insurance application that asked if she "had a foreclosure, repossession, bankruptcy, judgment or lien during the past five years." It turns out that her mortgagee had commenced the foreclosure process two days earlier, and after the home burned a few weeks later, the insurer refused to pay the homeowner's claim. The district court there granted summary judgment to the insurer because of her alleged misrepresentation. *See id.* at *2, *4.

-6-

We don't find *Buford* apposite for two reasons. First, the court there did not address the issue of whether the question was ambiguous, and, as far as we can tell, the parties did not ask it to. Second, the application question before us is slightly, but materially, different from the one in *Buford*. Notice that the question here asked not only whether the applicant had had a foreclosure but also whether the applicant had had a "bankruptcy or filed for bankruptcy." Bankruptcy resembles foreclosure in that it is a procedure that culminates in an event that alters the rights of the parties involved. But notice, too, that the application question was careful to distinguish between the commencement of that process ("filed for bankruptcy") and the culmination of it (just "bankruptcy"). The application doesn't draw a similar distinction for foreclosures. Perhaps the application is phrased this way for bankruptcy to ensure that an applicant disclosed both voluntary and involuntary bankruptcies. But a reasonable applicant might understand the difference in treatment between foreclosures and bankruptcies as an invitation to disclose only foreclosures that were completed with a sale, as the question did not similarly ask the applicant if someone had "filed for foreclosure" against her. This additional contextual clue supports our view that the phrase could reasonably refer to a foreclosure sale, *see Singletary v. Singletary*, 431 S.W.3d 234, 240 (Ark. 2013), and it further distinguishes our case from *Buford*.

Hiscox also points out that it was important for it to know if foreclosure proceedings had been commenced because it "indicates financial distress, lack of ability to pay the mortgage, an[] inability to maintain the property, and the prospect of the insured losing possession and control of the property." That may well be true, but that doesn't mean that Hiscox asked her for this information or that Taylor misrepresented her circumstances. If Hiscox wanted certain information so it could make an informed insurance decision, it should have asked Taylor for it in a clear, unambiguous way.

Finally, Hiscox says that there's no reason to apply the typical rule that ambiguities are construed in favor of the insured, *see U.S. Fid.*, 120 S.W.3d at 560, because it did not draft the form in question; rather, Taylor and her agent selected this "industry standard ACORD application" to submit to Hiscox. But Hiscox admitted that it regularly used the form in question and relied upon it. In fact, it appears to have conceded, or at least did not dispute at the appropriate time, that it required applicants to submit an ACORD form or something similar. The rule about construing ambiguities in favor of the insured applies not only when the insurer drafts the words in question but also when it "chooses" those words. *See Southall v. Farm Bureau Mut. Ins. Co. of Ark.*, 632 S.W.2d 420, 421 (Ark. 1982). On this record, we think Hiscox chose the relevant language on the subject of foreclosures by prodding applicants to submit this very form, and so the ambiguity should be resolved in Taylor's favor.

We therefore hold that the question asking Taylor whether she had "had a foreclosure" was ambiguous and so her response in the circumstances was not a misrepresentation entitling Hiscox to rescind the policy. Hiscox asserts that we should nonetheless affirm the judgment because Taylor made other misrepresentations entitling it to rescind the policy. The district court touched on these other supposed misrepresentations but did not decide whether they entitled Hiscox to summary judgment. We therefore leave those matters to the district court to sort out in the first instance on remand.

Reversed and Remanded.

_____