# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1161
_____

Hiscox Dedicated Corporate Member, Limited

*Plaintiff - Appellee*

v.

Suzan E. Taylor

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs
_____

Submitted: April 17, 2025
Filed: December 16, 2025
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

LOKEN, Circuit Judge.

More than five years after this protracted insurance coverage dispute began, Suzan Taylor appeals the district court's[1] ruling, following our resolution of an earlier appeal, that Taylor made one or more material misrepresentations in applying for

_____

[1] The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

property insurance covering her home in Hot Springs, Arkansas, and violated the policy's "Concealment or Fraud" coverage condition. Therefore, the court held, the insurer properly declared the policy void *ab initio* and denied coverage for loss caused by a fire that destroyed the home. For the following reasons, we conclude the district court did not err and therefore affirm.

## I. Background

Suzan Taylor owns various real properties in Arkansas which she has separately insured with the help of an independent insurance agent, Nicky Hodges. Hiscox Dedicated Corporate Member Limited ("Hiscox") is a United Kingdom corporation that is a capital provider to Hiscox Syndicate 33, an underwriting syndicate doing business within the Lloyd's of London insurance marketplace. Burns & Wilcox, Ltd. ("B&W") is a multi-state insurance agency that the Syndicate 33 underwriters, including Hiscox, have authorized to serve as their "coverholder" in underwriting and issuing binding property insurance policies on certain types of risks in Arkansas.[2]

In early 2018, seeking a policy covering her home at 654 Springwood Road, Hot Springs National Park, Arkansas ("the Hot Springs Property"), Taylor filled out an industry standard ACORD form provided by insurance agent Hodges to apply for a suitable policy.[3] As relevant here, Taylor's completed form provided the following answers to application questions:

---

[2]Under Arkansas law, Hiscox and the other Syndicate 33 underwriters are only authorized to issue surplus lines insurance through a licensed Arkansas surplus lines insurer such as B&W. Thus, B&W as coverholder was acting as a surplus lines broker and agent of Hiscox in helping the Syndicate underwriters conduct insurance business in Arkansas outside the limits of their Arkansas licenses.

[3]This standard form is frequently used by retail agents seeking quotes from insurers like Hiscox.

1. Has applicant had a foreclosure, repossession, bankruptcy or filed for bankruptcy during the past five (5) years? **No**
2. Has applicant had a judgment or lien during the past five (5) years? **No**
3. Any losses, whether or not paid by insurance, during the last 3 years at this or any location? **Brush or Brush & Grass Mixture Fire**
4. Has any coverage been declined, cancelled or non-renewed during the last three (3) years? **Yes - Builders Risk policy with American Zurich is nonrenewing on 02/15/2018**
5. Is the dwelling/home for sale? **No**

In February 2018, Hodges returned the completed form to Taylor with a quote Hodges obtained from B&W for a Lloyd's of London policy providing High Value Homeowners property insurance and obligating Hiscox and the other Syndicate 33 participants to pay for covered property damage to the Hot Springs Property. Taylor signed the completed application, declaring "that the information provided . . . is true, complete and correct to the best of my knowledge and belief [and] is being offered to the company as an inducement to issue the policy for which I am applying." After reviewing the completed application, B&W issued the policy covering the Hot Springs Property for an effective period from February 8, 2018 to February 8, 2019, listing B&W as the Underwriters' "correspondent" for the insurance certification. The policy provided dwelling coverage up to $2,600,000, personal property coverage up to $1,300,000, and loss of use/rents coverage up to $260,000.

A fire destroyed the Hot Springs Property on August 6, 2018. The Claims Manager for Syndicate 33 directed the insurer's third party administrator to conduct a claim investigation. The administrator reported several "red flags" raising the possibility of arson, but the cause of the fire remained inconclusive due to the extent of the damage and lack of physical evidence.

Hiscox also investigated potential misrepresentations made in the ACORD policy application, and counsel conducted an Examination Under Oath of Taylor on September 5 in Hot Springs. Parsons determined that Taylor made several misrepresentations, underwriters at B&W and Hiscox London Market confirmed they were material, and Parsons directed that the policy be rescinded *ab initio*. Hiscox returned the policy premium to Taylor. Taylor's counsel mailed it back, stating she disagreed with the decision to rescind the policy.

On October 15, 2018, Hiscox commenced this diversity action seeking a declaratory judgment that it properly rescinded the policy *ab initio*; Hiscox has no duty to pay for loss for the fire at the Hot Springs Property; and, alternatively, "there was no coverage for the claim regarding the fire at the Property pursuant to the policy's 'Concealment or Fraud' condition." The Complaint for Declaratory Judgment alleged six distinct material misrepresentations by Taylor in answering questions on the Lloyd's policy application.[4] Taylor answered the Complaint and filed counterclaims for breach of contract, bad faith claim handling, and improper rescission. She also filed a third party complaint against B&W but those claims were dismissed in April 2020, before the close of discovery.

---

[4]The underwriters alleged that Taylor failed to disclose: (1) that foreclosure proceedings on the Hot Springs Property were in progress at the time of the policy application; (2) that Taylor owned a house in Fairfield Bay, Arkansas ("the Fairfield Bay Property") that was sold in a foreclosure sale in 2016; (3) that Taylor had an outstanding judgment against her in favor of Deere Credit, Inc.; (4) that an earlier policy covering the Hot Springs Property was non-renewed in 2016; (5) that Taylor submitted a theft claim in 2016 for loss to the Hot Springs Property that was not listed on the application; and (6) that the Hot Springs Property was listed for sale for $1.5 million at the time of the application. The Complaint alleged that "Underwriters would not have issued the Policy or would not have issued it on the same terms and conditions, had Taylor truthfully completed the application."

-4-

## II. Procedural History

Following extensive discovery, the parties cross-moved for summary judgment. On October 7, 2021, the district court granted Hiscox's summary judgment motion. Applying Arkansas law, the court held that the question asking whether Taylor had a foreclosure, repossession, bankruptcy, or filed for bankruptcy during the past five years was unambiguous, "the filing of the [pending] foreclosure against the [Hot Springs Property] obviously constituted a foreclosure," and Taylor's failure to disclose that foreclosure had begun a week before she submitted the application was a material misrepresentation that allowed Hiscox to rescind the policy *ab initio*. The court did not rule on whether the other alleged misrepresentations justified rescission of the policy. The court dismissed Taylor's counterclaims with prejudice.

Taylor appealed and we reversed the district court's judgment dismissing Taylor's complaint. Hiscox Dedicated Corp. Member, Ltd. v. Taylor, 53 F.4th 437, 442 (8th Cir. 2022) (Hiscox I). We held that the question asking Taylor whether she "had a foreclosure" was ambiguous in the circumstances. The term foreclosure "commonly means different things depending on the context in which it appears. Sometimes people use the word 'foreclosure' to mean the foreclosure sale itself. . . . The word can also reasonably mean the process leading up to that sale." Id. at 440. Under Arkansas law, "where the language used 'is ambiguous, or there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted.'" Id. at 439 (quotation omitted).

Adopting the interpretation more favorable to Taylor -- defining the word "foreclosure" as the ultimate sale of the property -- meant that Taylor's answer to the application question was not a misrepresentation entitling Hiscox to rescind the policy. Foreclosure proceedings had been initiated but the Hot Springs Property had not yet been sold. We declined to address the other alleged material

-5-

misrepresentations on which the district court had not ruled, including Taylor's failure to disclose that the Fairfield Bay Property had been sold in a foreclosure sale in 2016. Instead, we reversed and remanded "leav[ing] those matters to the district court to sort out in the first instance on remand." Id. at 442.

On remand, in late December 2022, the district court issued an interlocutory order denying both parties' summary judgment motions and setting the case for trial because there were genuine issues of material fact (i) whether Hiscox, by and through its agent B&W, knew about the information Taylor omitted from her application, and (ii) even if Hiscox did not have knowledge of each misrepresentation, whether the misrepresentation at issue was material because "Hiscox would have declined to issue the policy to Taylor had all pertinent facts been known." Two weeks later, the case was reassigned from Senior District Judge Robert Dawson (now retired) to then-Chief Judge Susan O. Hickey. On August 4, 2023, Chief Judge Hickey continued the scheduled trial because the issues addressed in the order denying the summary judgment motions "require further analysis prior to the trial."

On August 31, exercising the district court's inherent power to reconsider and modify an earlier interlocutory order, Chief Judge Hickey granted Hiscox's motion for summary judgment, denied Taylor's motion, and dismissed Taylor's counterclaims with prejudice. The court focused on Taylor's alleged material misrepresentation in failing to disclose that the mortgagee had initiated foreclosure proceedings on the Fairfield Bay Property in 2014 and that the house eventually sold in a foreclosure sale in 2016. In a thorough opinion, the court granted Hiscox's summary judgment motion, concluding that Taylor made a material misrepresentation when she failed to disclose that another property she owned, the Fairfield Bay Property, was sold in a foreclosure sale in 2016. The foreclosure question as it related to the Fairfield Bay Property was not ambiguous, the court held, because the foreclosure proceedings started in 2014 and the home was sold in a foreclosure sale in 2016, all within the five-year period specified in the application question. Thus,

"either reasonable reading of the word 'foreclosure' articulated by the Eighth Circuit would apply to the Fairfield Bay property." There was no genuine dispute that the misrepresentation was material, as there was uncontroverted testimony by the Hiscox underwriters "that the policy would not have been issued" if Taylor disclosed the Fairfield Bay Property foreclosure.

The district court addressed at length what it saw as the "core contention" in Taylor's summary judgment motion -- that Hiscox, by the actions and knowledge of its general agent B&W, had knowledge of the Fairfield Bay Property foreclosure and therefore could not rely on Taylor's misrepresentation. Applying general agency principles of Arkansas law, the court explained that knowledge of a general insurance agent is considered knowledge of its principal -- here insurer Hiscox and the other Syndicate 33 underwriters -- if the agent acquires that knowledge *when acting within the scope of its agency relationship for the principal*. Though there is evidence that B&W learned of the Fairfield Bay Property foreclosure while acting as an agent for a different insurer, Syndicate 609, that knowledge cannot be imputed to Hiscox. Thus, Taylor's misrepresentation entitled Hiscox to rescind the policy *ab initio* and decline to cover the fire losses. And because Hiscox properly voided the insurance policy *ab initio* based on Taylor's material misrepresentation, Taylor's breach of contract and bad faith counterclaims fail for lack of a valid and enforceable contract.

In addition, the district court concluded that, even assuming no material misrepresentation, Hiscox properly denied coverage under the Concealment or Fraud section of the policy. Taylor undisputedly made a false statement in her application, violating the Concealment or Fraud section, which excludes coverage if Taylor made "false statements; relating to this insurance."

On December 28, 2023, the district court denied Taylor's motion for reconsideration because she "has not presented any 'manifest error of law or fact' in the court's order," her "assertions regarding Arkansas [agency] law are not supported

by the cases she cites," and her allegations and arguments "regarding the factual record . . . are not supported by the record." Contrary to Taylor's assertion, the court repeated, there are no facts in the record suggesting that B&W learned of the Fairfield Property foreclosure while working for Hiscox. The court also declined to reconsider its pre-remand decision dismissing B&W, as Taylor failed to litigate that issue in Hiscox I. This appeal followed.

## III. Discussion

We review the district court's grant of summary judgment and its interpretation of Arkansas law and an insurance policy *de novo*, viewing the facts in the light most favorable to Taylor, the non-moving party. Bob Robison Com. Flooring Inc. v. RLI Ins. Co., 131 F.4th 832, 836 (8th Cir. 2025). Under Arkansas law, Hiscox could properly rescind the policy and decline to cover the loss to the Hot Springs Property if Taylor made a material misrepresentation in her application. See, e.g., Ferrell v. Columbia Mut. Cas. Ins. Co., 816 S.W.2d 593, 595 (Ark. 1991).

## A. The Material Misrepresentation Issue

On appeal, Taylor first argues the district court erred in granting Hiscox summary judgment because her failure to disclose that foreclosure proceedings on her Fairfield Bay Property began in 2014 and the house was sold in a foreclosure sale in 2016 was not a material misrepresentation.

**i. Misrepresentation.** First, Taylor argues that Judge Dawson twice found Ms. Taylor had asserted material fact questions that precluded summary judgment on this issue and Chief Judge Hickey "took it upon herself to find the exact opposite" without a hearing or renewed briefing. The district court "necessarily (and improperly) re-weighed the evidence" in finding that Taylor knew or should have known the property had been sold in a 2016 foreclosure sale. This contention is

-8-

without merit. A district court "has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1070 (8th Cir. 1995) (citation omitted).

Second, Taylor argues for the first time on appeal that, viewing the evidence in the light most favorable to Ms. Taylor, she did not know and should not reasonably be expected to know the house was sold in foreclosure in 2016. According to Taylor, she "voluntarily surrendered [the Fairfield Bay Property] to the mortgage company" in 2011.[5] Taylor did not argue to the district court that non-disclosure of the Fairfield Bay Property foreclosure was not a misrepresentation, so this argument was not preserved and we need not consider it. See, e.g., Hiland Partners GP Holdings, LLC v. Nat'l Union Fire Ins. Co., 847 F.3d 594, 598 (8th Cir. 2017).

Moreover, even if preserved, the record refutes this assertion. In 2014, Taylor received an email from her insurance agent, Jessica Jacobs, stating "I wanted to let you know that Burns & Wilcox will be non-renewing the insurance on [the Fairfield Bay Property] effective October 05, 2014. *The reason for non-renewal is the house is in foreclosure*." The Federal National Mortgage Association mailed, to several of Taylor's addresses, a notice of a mortgagee's sale in 2015. When asked in a deposition whether she knew the Fairfield Bay Property was foreclosed on, Taylor answered, "I think so, yes." And even absent further knowledge, a reasonable property owner should understand that the mortgagee will foreclose when he or she surrenders a home and stops making mortgage payments. Undisputed facts support the district court's finding that Taylor knew or should have known about the Fairfield Bay Property foreclosure when she answered this application question.

Under Arkansas law, an insurer may rescind coverage because of fraud *or* material misrepresentation. See Ferrell, 816 S.W.2d at 595. If a misrepresentation

---

[5]Taylor obtained insurance on the Fairfield Bay Property in 2013.

is material to the risk, "the fact that the misrepresentation was made innocently and in good faith is of no moment." 2 Couch on Insurance 3d § 31:82 (rev. 2024). "A misrepresentation is a statement of fact that is untrue or a failure to disclose a fact in response to a specific question." Shipley v. Ark. Blue Cross & Blue Shield, 333 F.3d 898, 904 (8th Cir. 2003).[6]

Third, Taylor argues that we held the application's foreclosure question ambiguous in Hiscox I, 53 F.4th at 442, and her reasonable interpretation of the same question again -- that there was not a foreclosure on the Fairfield Bay Property because she had voluntarily surrendered it -- "warrants a finding of ambiguity once again." The district court disagreed, finding that neither proffered interpretation of the word "foreclosure" would be favorable to Taylor and excuse her failure to disclose the foreclosure. If "foreclosure" means the process leading up to the sale of Fairfield Bay Property, Taylor should have answered "yes" because foreclosure proceedings began in 2014, within the specified five year period. And if foreclosure "refers simply to a foreclosure sale," id. at 440, Taylor should have answered "yes" because the Fairfield Bay Property was sold in a 2016 foreclosure sale. We agree with the district court: "there is no reasonable reading of the foreclosure question that can be 'favorable to the insured' regarding the Fairfield Bay Property," so the question "is not ambiguous in this circumstance." We also agree "there is no genuine dispute that Taylor made a misrepresentation when she answered 'No' to the foreclosure question because a foreclosure had occurred."

_____

[6]Taylor's Reply Brief, Taylor, citing McQuay v. Ark. Blue Cross & Blue Shield, 98 S.W.3d 454, 459 (Ark. App. 2003), argues that when an application contains a clause stating, "the information provided . . . is complete and correct to the best of my knowledge and belief," the applicant's actual knowledge and belief are relevant in determining whether applicant made a misrepresentation. Taylor did not make this argument to the district court or in her opening brief so we decline to consider it. See Huber v. Westar Foods, Inc., 139 F.4th 615, 626 n.1 (8th Cir. 2025) (en banc). We note that McQuay, a non-binding Arkansas Court of Appeals decision, is readily distinguishable.

**ii. Materiality.** Taylor argues her answer regarding foreclosure of the Fairfield Bay Property was not a material misrepresentation entitling Hiscox to rescind the policy because she presented evidence that Hiscox, through B&W, had actual knowledge of a foreclosure at the Fairfield Bay Property in at least 2014, and B&W continued to accept premiums and issued five additional policies on behalf of Lloyd's underwriters, including the 2018 policy at issue. "Accordingly, B&W's undisputed course of dealings with Ms. Taylor demonstrate that a past foreclosure was of no consequence" and therefore, even if a misrepresentation, was immaterial. Like the district court, we disagree.

Under Arkansas law, materiality is a question of fact "so long as the matter is debatable" but a question of law "when so obvious that a contrary inference is not permissible." Nationwide Prop. & Cas. Ins. Co. v. Faircloth, 845 F.3d 378, 382 (8th Cir. 2016). A misrepresentation is material if the insurer shows that "had it known of the misrepresented facts, the circumstances were such that it would not have issued the *present coverage*." Id. (emphasis added, cleaned up). Uncontroverted testimony from underwriters that the misrepresentation is material may be conclusive at summary judgment. See Morgan v. S. Farm Bureau Cas. Ins. Co., 200 S.W.3d 469, 472 (Ark. App. 2004) (citation omitted); Faircloth, 845 F.3d at 383.

Here, there was uncontradicted testimony from B&W and Hiscox underwriters that they would not have issued the policy had Taylor properly disclosed the Fairfield Bay Property foreclosure. The B&W underwriter responsible for evaluating Taylor's application testified that had Taylor answered "yes" to the foreclosure question she would have declined to offer coverage "every single time." In addition, Hiscox underwriter Robert Beere testified that had he been referred the policy, he would have declined coverage if Taylor disclosed the Fairfield Bay Property foreclosure -- it would have been a "straight decline." A foreclosure, according to Beere, would indicate that Taylor was "in a weak financial position," that she would "be more likely to put in claims than a normal insured," and that there would be "a higher

-11-

chance that [she] may try and burn the house down." Likewise, Hiscox's underwriting guidelines provide that "risks in foreclosure proceedings" are a "straight decline." We agree with the district court that "Taylor highlights nothing in the record directly contradicting" the underwriters' testimony.

**iii. Knowledge.** The district court concluded that if Hiscox, either directly or through its general agent B&W,[7] had knowledge of the material misrepresentation, the doctrine of waiver and estoppel would preclude voiding the policy *ab initio*. See, e.g., S. Nat'l Ins. Co. v. Heggie, 174 S.W.2d 931, 934 (Ark. 1943). However, only knowledge that B&W acquired *while acting within the scope of this agency relationship* will be imputed to Hiscox and the other Syndicate 33 underwriters. See Kansas City Fire & Marine Ins. Co. v. Kellum, 254 S.W.2d 50, 51-52 (Ark. 1953); accord Cont'l Ins. Cos. v. Stanley, 569 S.W.2d 653, 657 (Ark. 1978).

One of B&W's underwriters, Brad Grounds, who had no involvement in issuing the policy here at issue, received an email in 2014 stating that "we received a call today from Bank of America regarding policy number ATRD556001 for Suzan Taylor. [The Fairfield Bay Property] is being foreclosed on." The district court found that B&W thereby obtained knowledge of the Fairfield Bay Property foreclosure in 2014, but that knowledge regarded a policy with a different policy number issued to Taylor on behalf of a different insurer, Syndicate 609. Therefore, the court concluded, the knowledge could be imputed to Syndicate 609, but not to Hiscox Syndicate 33. As Taylor never alleged that B&W was acting within the scope of its agency relationship with Hiscox and "has not pointed to anything in the record

---

[7]Under Arkansas law,"general agents" are authorized to accept risks, agree upon the terms of an insurance policy, and issue new policies, whereas "soliciting agents" lack authority to "agree upon the terms of the policies or to change or waive those terms." Dodds v. Hanover Ins. Co., 880 S.W.2d 311, 314-15 (Ark. 1994). The district court found it undisputed that B&W was a general agent of the Hiscox Syndicate 33 underwriters. Hiscox does not challenge that finding on appeal.

indicating that the Fairfield Bay Property foreclosure was ever disclosed," the district court found "that there is no genuine dispute that knowledge of the foreclosure . . . was not imputed to Hiscox."

On appeal, Taylor argues that B&W's knowledge that foreclosure proceedings were underway in 2014 should be imputed to Hiscox. Like the district court, we disagree. Taylor argues the well-established principle -- that only knowledge of the agent gained while working for the principal is imputed to that principal -- "is not dispositive" in this insurance context because "what matters" is whether B&W had knowledge of facts that would invalidate the policy at inception, here the Fairfield Bay foreclosure, when it issued the Hot Springs Property policy in 2018.

Taylor waived this argument. She argued to the district court that "knowledge gained by B&W . . . may be imputed to Hiscox *when it was acting on Hiscox's behalf.*" Indeed, a header to her summary judgment motion read, "B&W's Knowledge is Imputed to Hiscox When Acting as its Agent." See Wiser v. Wayne Farms, 411 F.3d 923, 926 (8th Cir. 2005) ("The rule that we will not address arguments raised for the first time on appeal applies even more forcefully when the appellant took the opposite position in the district court.") (citation omitted). Moreover, we have not found, and Taylor has not cited, a case suggesting that agency law should be applied differently in the insurance context. We have carefully reviewed the Supreme Court of Arkansas analysis of the complex facts in Kellum, on which Taylor principally relies for this argument, and conclude that it does not support the notion "that Arkansas law exempts general agents for insurers from this fundamental tenet of agency law."[8]

---

[8]Implicitly acknowledging that B&W's knowledge could not be imputed to Hiscox, Taylor sought reconsideration of the district court's prior order dismissing B&W. The district court did not err in denying reconsideration of the prior order because Taylor did not challenge B&W's dismissal in Hiscox I.

For these reasons, we agree with the district court that Hiscox properly rescinded the Hot Springs Property policy because, in answering the policy application questions, Taylor materially misrepresented that her Fairfield Bay Property had not been foreclosed on.

## B. The Concealment or Fraud Section

The policy's "Concealment or Fraud" section provides, as relevant here, that there will be no coverage if the insured has "Made false statements; relating to this insurance." The district court concluded that even if the Policy was not rescinded based on a material misrepresentation, the Concealment or Fraud section of the Policy precludes coverage because Taylor made a false statement relating to this insurance by not disclosing the Fairfield Bay Property foreclosure in the policy application, and this provision unambiguously does not require that the false statement be intentionally made. On appeal, Taylor argues the district court erred in applying the Concealment or Fraud section.

In addition to the Misrepresentation and agent Knowledge contentions we have rejected in Parts III.A.i and III.A.iii of this opinion, Taylor argues in her Reply Brief, as she did to the district court, that "a plain and ordinary reading of the Concealment or Fraud provision necessitates a knowing, intentional statement . . . [or] the provision is ambiguous because a plain reading . . . is fairly susceptible to another reasonable interpretation" that is more friendly to the insured.

We generally do not review arguments first raised in a reply brief. Gatewood v. City of O'Fallon, 70 F.4th 1076, 1079 (8th Cir. 2023). Here, though, the argument was raised to the district court. We conclude the court rightly rejected it. Under Arkansas Law, "[i]f the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction." Elam v. First Unum Life Ins. Co., 57 S.W.3d 165, 169 (Ark. 2001). We agree with

-14-

the district court that the Fraud or Concealment section unambiguously precludes coverage if Taylor made a false statement, whether intentional or not. As the district court stated "[t]he clause regarding false statements contains no such requirement as [other] clauses . . . do [and] the 'or' that precedes the clause regarding false statements indicates it is a separate ground for exempting coverage and not tethered to the clauses requiring intentional misrepresentation." Therefore, the Fraud or Concealment section precludes coverage for the Hot Springs Property fire loss because Taylor made a false statement when she failed to disclose the Fairfield Bay Property foreclosure on the policy application.

### C. Taylor's Counterclaims

Finally, Taylor argues "the district court erred in dismissing Taylor's counterclaims because it erred in granting summary judgment in favor of Hiscox." Having concluded the district court properly granted summary judgment in favor of Hiscox on its claims, we agree with the district court that Taylor's counterclaims necessarily fail and must be dismissed with prejudice. Rescission of a policy makes it void *ab initio*, "as if the policy never existed." Nationwide Mut. Fire Ins. Co. v. Citizens Bank & Tr. Co., 431 S.W.3d 292, 295 (Ark. 2014). With no enforceable contract in existence, Taylor's breach of contract claim must fail. See Smith v. Eisen, 245 S.W.3d 160, 168-69 (Ark. App. 2006). Her bad faith counterclaim likewise fails -- if Hiscox properly denied coverage after properly investigating Taylor's misrepresentations, it cannot have acted in bad faith, that is, "affirmatively engage[d] in dishonest, malicious, or oppressive conduct in order to *avoid a just obligation to its insured*." Columbia Nat'l. Ins. Co. v. Freeman, 64 S.W.3d 720, 723 (Ark. 2002) (emphasis added). Finally, Taylor's claim for improper rescission fails because we conclude Hiscox properly rescinded the Policy.

For the foregoing reasons, the judgment of the district court is affirmed.

_____